IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES IRVIN QUICK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-83 |
| | § | |
| WILLIAM STEPHENS, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Irvin Quick (TDCJ #01616324) is incarcerated at the Eastham Unit of the Texas Department of Criminal Justice ("TDCJ"). He has filed a complaint under 42 U.S.C. § 1983 alleging that, while he was exiting a prison bus in Galveston, he fell as a result of the defendants' deliberate indifference to his safety (Dkt. 1 at p. 3). The Court requested a *Martinez* report[1] from the Texas Attorney General's office, which the Attorney General's office provided (Dkt. 22). The Court construed the *Martinez* report as a motion for summary judgment filed on behalf of the defendants and notified Quick of that construction (Dkt. 24). Quick did not file a response to the *Martinez* report; instead, he requested leave to file a first amended complaint that included new causes of action but not new factual allegations (Dkt. 32). After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants' motion for summary judgment must be granted

---

[1] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

for the reasons that follow. Quick's request for leave to add causes of action under the Civil Rights of Institutionalized Persons Act ("CRIPA") and the Americans with Disabilities Act ("ADA") is denied.

## I. BACKGROUND

Quick alleges that he was injured on August 29, 2012 when he fell while exiting a chain bus to attend an appointment at the University of Texas Medical Branch ("UTMB") in Galveston (Dkt. 1 at p. 3). According to Quick, the loading of the bus at his unit was conducted "in a careful and safe manner with placement of an extra step to assure safe loading and to prohibit a fall" (Dkt. 1 at p. 3). However, the unloading of the bus at UTMB was "hasty[;]" and, as a result, "the extra step was not applied" and Quick fell "while being rushed off the bus" (Dkt. 1 at p. 3). Quick attributes the absence of the extra step to time pressure—the correctional officers overseeing the transport were in a "hurry" to "get the show on the road" (presumably, this means to get the inmates to their appointments) when they arrived at UTMB (Dkt. 7 at p. 2).

When he fell, Quick was 70; suffered from several serious medical conditions, including diabetes, heart problems, and abnormal blood pressure; and had an artificial knee joint (Dkt. 1-1 at p. 1). At the time of his fall, Quick was subject to the following restrictions: ground floor housing assignment only; lower bunk only; sedentary work only; limited standing; no climbing; no temperature extremes; and a four-hour work restriction (Dkt. 22-1 at p. 145). He had been issued a six-month cane pass, but his classification file did not

indicate any need for a wheelchair or any special transportation needs (Dkt. 22-1 at pp. 26, 145). There is no indication in Quick's classification file that he was listed as presenting a heightened fall risk, and he does not claim that he was so listed. It is difficult to determine whether Quick had a cane with him on the bus, but he does not claim that he was denied the opportunity to use one.

Quick filed a grievance after the fall, and the investigative file is part of the summary judgment record (Dkt. 22-1 at p. 9). Two officers who were assisting in the transport, Officer Collier and Officer Scott, gave statements (Dkt. 22-1 at p. 9). Officer Collier's statement says that "Officer Scott announced that if any offender needed assistance off the bus to remain seated and assitance [sic] will be provided" (Dkt. 22-1 at p. 12). Officer Scott's statement says that he indeed helped inmates exit the bus and removed the hand restraints from the inmates who needed to use their hands for extra support (Dkt. 22-1 at p. 13). The officers further stated that, after Quick fell, he told Officer Collier that he "was OK" and then "walked on his own power into the [UTMB] intake area" (Dkt. 22-1 at pp. 12–13).

Quick's grievance was denied at both steps. The response at step two included the following passage:

> Transportation has completed an investigation into your complaint. They stated in the future you should ask for assistance and wait until you attempt to leave the vehicle. The transport officers assisted offenders that requested assistance getting off the bus.
> Dkt. 1-1 at p. 4.

Quick does not deny that the officers offered assistance to the inmates who requested

-3-

it, and he does not claim that he himself asked for help. Quick has listed as defendants William Stephens, who at the time of Quick's fall was the Director of the Correctional Institutions Division of TDCJ, and the John Doe defendants "bus operator, officer" (Dkt. 1 at p. 1).

## II. THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A. The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Quick, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Quick proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 56

The Texas Attorney General's office has filed a *Martinez* report, which the Court construes as a motion for summary judgment filed on behalf of the defendants. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the

existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel.*

*Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Quick is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to put that evidence properly before the court. *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### C. Qualified Immunity

The defendants' motion invokes qualified immunity (Dkt. 22 at p. 5). In civil rights

actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at

253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III. QUICK HAS NOT PRESENTED EVIDENCE OF DELIBERATE INDIFFERENCE TO HIS SAFETY.

Quick alleges that the defendants violated his rights under the Eighth Amendment by forcing him to hurry off of the chain bus without providing an extra step between the bus's door and the ground (Dkt. 1 at p. 3; Dkt. 7 at p. 2).

#### A. Prisoners and safety—the legal standard

Under the Eighth Amendment, prisoners have a right to "humane conditions of confinement[,]" and prison officials are required to provide the prisoners with adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quotation marks omitted). Prison officials must take reasonable measures to guarantee the

safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment mandates *reasonable* safety, not *absolute* safety; and prison officials are not liable when they make good-faith errors in assessing a potential danger. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Not every injury suffered by a prisoner translates into Constitutional liability for prison officials responsible for the inmate's safety. *Farmer*, 511 U.S. at 834. Rather, Quick must show that the defendants were deliberately indifferent to his safety. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or mistaken in their judgment. *Id.*; *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999). To establish deliberate indifference in a prison conditions case, a prisoner must show that the prison officials: (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) actually drew an inference that such potential for harm existed. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). The deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the

person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

In short, it is not enough that Quick was injured by the lack of an extra step, or even (for the sake of argument) that the defendants were in a hurry and were negligent in failing to provide an extra step. In order to establish an Eighth Amendment violation, Quick must show that the defendants knowingly exposed him to and consciously disregarded a substantial risk of serious harm. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

### B. Quick's claims and evidence against the John Doe defendants

The Court will grant summary judgment on the claims against the John Doe defendants for deliberate indifference to Quick's safety. The Court first notes that nearly all of Quick's submissions to the Court are unsworn, meaning that they do not constitute competent summary judgment evidence. *See Davis v. Hernandez*, 798 F.3d 290, 291 (5th Cir. 2015); *see also Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). The one exception is a motion for summary judgment (which Judge Hoyt denied before this case was reassigned to the undersigned judge) in which Quick declared under penalty of perjury that the facts set forth within were true and correct (Dkt. 7 at p. 6). Because Quick is proceeding *pro se*, the Court will consider his motion for summary judgment as tantamount to a verified complaint and will consider it part of the summary judgment record. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an

affidavit."); *see also Davis*, 798 F.3d at 293 ("[F]ederal courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted).

Quick's evidence, taken as true, establishes that, in Quick's experience, "[d]uring the process of unloading [inmates from the chain bus,] a small extra step is usually placed on the ground" as a safety measure (Dkt. 7 at p. 2). On the day on which Quick fell, "the officers were in so much hurry [sic] that they didn't apply the usual step which is a very much needed safety measure and when [Quick] was rushed off the bus, [he] fell" (Dkt. 7 at p. 2). However, Quick, again, does not controvert the evidence showing that the officers offered assistance to the inmates who requested it; and no evidence shows that Quick himself asked for help.

The Court holds that the John Doe defendants are entitled to qualified immunity. Quick has not presented evidence showing that the John Doe defendants were aware of and consciously disregarded a substantial risk of serious harm created by the absence of an extra step, and he has failed to demonstrate that the John Doe defendants' conduct was objectively unreasonable under the circumstances with which they were confronted. On the contrary, Quick's evidence simply shows that the John Doe defendants were acting under time pressure and were, at most, negligent in failing to put the extra step down. Moreover, uncontroverted evidence shows that other inmates received help exiting the bus and that Quick would have received such help if he had asked for it. Far more egregious facts have failed to defeat qualified immunity. For instance, in *Crumbliss v. Darden*, No. 4:09-CV-3706, 2011 WL 1496907 (S.D. Tex. Apr. 18, 2011), *aff'd*, 469 Fed. App'x 325 (5th Cir.

2012), an inmate who was confined to a wheelchair with his leg in a halo brace after a recent surgery wanted to go to his brother's funeral, which was about a one-hour-and-fifteen-minute drive from the prison. *Id.* at *1. He was to be taken there by a driver and a security officer; and while they were loading him into the van a little over an hour before the funeral, his escorts noticed that the van lacked tie-down straps for the wheelchair. *Id.* Their supervising officer, mindful that the inmate "wanted to go to his brother's funeral and there was little time to spare . . . told them to go after assuring them that it was okay." *Id.* at *6. During the trip, the wheelchair rolled and the inmate bumped his leg twice, exacerbating his injuries to the point that he had to wear the halo brace for six weeks longer than his doctors had originally planned. *Id.* at *1–2. Although she had underestimated the danger posed by the failure to tie down the wheelchair, the supervising officer was nevertheless entitled to qualified immunity because she had simply made a judgment call that, even if "ill-advised," did not constitute deliberate indifference. *Id.* at *6; *see also Newton*, 133 F.3d at 308 ("As it turns out, [the defendant] was mistaken in his assessment of the seriousness of the threat; but, obviously, that does not deprive him of qualified immunity for the exercise of his discretion in making that assessment.").

If anything, the threat to inmate safety in the *Crumbliss* case was far more easily perceptible than the one presented here by the absence of an extra step. The John Doe defendants are entitled to summary judgment.

## IV. QUICK HAS NOT PRESENTED ANY EVIDENCE SHOWING THAT DEFENDANT WILLIAM STEPHENS COULD BE HELD LIABLE.

Quick also seeks relief under the Eighth Amendment against Stephens (Dkt. 1 at p. 1). However, even if the John Doe defendants had committed a Constitutional violation, Quick has not provided any evidence showing that Stephens could be held liable for it. There is no vicarious or *respondeat superior* liability for supervisors under Section 1983. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). A supervisory official may generally be held liable under Section 1983 only if he either: (1) affirmatively participated in the acts that caused the Constitutional deprivation; or (2) implemented unconstitutional policies that causally resulted in the Constitutional deprivation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Quick has not presented any evidence that Stephens had any involvement whatsoever in this incident. Stephens is entitled to summary judgment.

## V. THE COURT WILL DENY QUICK LEAVE TO ADD NEW CAUSES OF ACTION.

As previously noted, Quick requested leave to file an amended complaint that presented new causes of action under CRIPA and the ADA (Dkt. 32 at p. 2). The amended complaint presents no new facts.

The Court will deny leave. A court can deny leave to amend if the proposed amendment would be futile on account of its failure to state a claim on which relief could be granted. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Under the facts he has pled, Quick cannot state a claim under either CRIPA or the ADA.

### A. CRIPA

The first claim that Quick seeks to add arises under the Civil Rights of Institutionalized Persons Act, or CRIPA, codified at 42 U.S.C. §§ 1997–1997j. As the Ninth Circuit has summarized, CRIPA authorizes the United States Attorney General to institute civil actions against certain institutions for violating the civil rights of persons confined or residing therein. *McRorie v. Shimoda*, 795 F.2d 780, 782 n. 3 (9th Cir. 1986). However, the Court cannot find any authority holding that CRIPA creates a *private* cause of action, and ample authority holds that it does not. *See id.*; *see also Weisman v. New Jersey Dep't of Human Services*, 817 F. Supp. 2d 456, 462 (D.N.J. 2011) (citing cases); *Ray v. Dep't of Corrections*, No. CIV-14-735-C, 2016 WL 1212773, at *3 (W.D. Okla. Mar. 2, 2016), *adopted*, 2016 WL 1228664 (W.D. Okla. Mar. 28, 2016). The Court will not grant leave to add this claim.

### A. The ADA

Quick also seeks to add a claim arising under Title II of the Americans with Disabilities Act. Such a claim requires a plaintiff to show that: (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by the defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997). In order to recover compensatory damages under the ADA, the

plaintiff must show intentional discrimination. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

Although the exact nature of his disability is unclear, Quick claims that he has difficulty walking, especially while handcuffed, and argues that the defendants' failure to accommodate that difficulty caused his fall. As Quick puts it in his proposed amendment, "Defendants knew their actions of forcing ambulatory handicapped plaintiff to enter and exit, while handcuffed, a bus that was not equipped for such offenders constituted an extreme degree of risk of harm to the plaintiff" (Dkt. 32 at p. 2). It is indeed true that a defendant's failure to make reasonable accommodations for the needs of a disabled person can constitute discrimination and be actionable under the ADA. *See Tennessee v. Lane*, 541 U.S. 509, 531 (2004) ("Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility."). And, "[i]n the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCollum v. Livingston*, No. 4-14-CV-3253, 2017 WL 608665, at *37 (S.D. Tex. Feb. 3, 2017) (citing cases). However, "there is a common sense aspect to determining whether a public entity has provided accommodations for a disabled individual, part of which requires the public entity be made aware of the inadequacy of the

accommodations provided." *Greer v. Richardson Ind. School Dist.*, 472 Fed. App'x 287, 296 (5th Cir. 2012). If the defendant does not know about the individual's disability, the resulting limitations, and the necessary reasonable accommodations—and if those things are not open, obvious, and apparent—then the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request from the individual. *See id.*; *McCoy v. Tex. Dep't of Criminal Justice*, No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (citing cases).

No facts pled by Quick establish that he was suffering from a disability so open and obvious that the need for particular additional accommodations should have been apparent, and no facts pled by Quick establish that he requested any particular additional accommodations. And nothing indicates that the defendants otherwise knew of any disability or need—Quick's inmate file, which is part of the defendants' *Martinez* report (and which Quick has not contradicted), shows that he was neither listed as presenting a heightened fall risk nor listed as needing special transportation accommodations. Quick's allegations illustrate that a portable extra step placed beneath the bus's door was enough to accommodate him when he got on the bus at his unit. When the correctional officers, in their alleged haste, failed to place that step beneath the door at UTMB, Quick did not ask for it before trying to step off of the bus. The Court also notes that, according to uncontroverted evidence contained in the defendants' *Martinez* report, the correctional officers asked the inmates on Quick's bus if any of them needed help exiting the bus at UTMB. Quick did not

request assistance. The Court will not grant leave to add a claim under the ADA.

## VI. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 22) is **GRANTED**, and all claims against them are dismissed with prejudice.

2. Any other pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties and to *amicus* counsel.

SIGNED at Galveston, Texas on September 18, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE